UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | 22-MJ-86(GMH) |
| : | |
| DAVID STEWART,   : | |
| : | |
| Defendant.   : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) (felony involving possession of a firearm), and 18 U.S.C. § 3142 (d)(1)(A)(iii) (probation/parole for any offense) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**Introduction**

David Stewart is a thirty-six year old male who has amassed a significant criminal history, including multiple firearms offenses and assaults. As recently as December 16, 2021, the defendant was sentenced by Judge Emmet G. Sullivan to a period of 41 months for unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g)(1).[1] The defendant had pled guilty in Case No. 17-CR-148(EGS) to Count 1 of a two-count indictment that actually involved two separate

---

[1] At the time of the sentencing, the defendant had effectively served the full sentence and was released shortly thereafter.

arrests for unlawfully possessing firearms: Count 1 related to an October 31, 2016, firearms arrest, and Count 2 related to a July 10, 2017, firearms arrest. As part of the guilty plea, the government agreed to dismiss Count 2.

Less than five months after his sentencing and the commencement of supervised release, the defendant is again before this Court on a set of facts that are extremely troubling, as detailed below. On April 26, 2022, the government spoke with the defendant's probation officer who advised that a warrant was being sought for violations of the defendant's supervision and that in addition to the instant arrest, his violations included drug use (PCP and THC), failure to report contacts with law enforcement (related to an incident with Secret Service), and failure to follow instructions.

In addition to the most recent case before Judge Sullivan, the defendant has the following prior convictions – including a number of convictions involving the possession of firearms:

- Attempted Carrying a Pistol Without a License & Possession of Cocaine (2006);
- Simple Assault and Assault on a Police Officer (2008);
- Carrying a Pistol Without a License (2008);
- Unlawful Possession of Contraband (2010);
- Assault on a Police Officer (2013); and
- Assault with a Dangerous Weapon (2014).

The defendant is currently charged by Complaint with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1). For the reasons set forth below, the government submits that the defendant should be held without bond pending trial to ensure the

safety of the community and his appearance at future court hearings.

## Procedural History and Applicable Authority

At the initial appearance on April 26, 2022, the government will orally move for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) (involving firearm or other dangerous weapon) and 18 U.S.C. § 3142 (d)(1)(A)(iii) (on probation or parole) of the federal bail statute. On April 26, 2022, an arrest warrant was signed by Magistrate Judge Harvey charging Defendant Stewart by Complaint with one count of Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The government contends that the defendant is a danger to the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In light of the facts and circumstances in this case and the defendant's history and characteristics, the government asks that the Court conclude that there is no condition or combination of conditions that would assure the safety of the community or the defendant's appearance at future proceedings. Therefore, Defendant Stewart should be detained. *See* 18 U.S.C. § 3142(e)(1).

## Nature and Circumstances of the Offenses Charged

On April 23, 2022, at approximately 1554hrs Officers Toth (Driver) and Officer Pitt (Passenger) were in full police uniform utilizing marked police cruiser 473 equipped with

emergency lights and sirens. Officers were on routine patrol when a radio run was dispatched over the Fourth District radio zone for sounds of gunshots in the area of 14th and Oak Street NW. Along with the sounds of gunshots call, a look out was giving for a black male wearing a black coat and a black skull cap/beanie. Officer King, callsign 4081, also responded to the call for service.

As Officers Toth and Pitt approached the location, they were approach by an unidentified van driver who stated words to the effect of "the man over there has the gun in his hand and is walking." The van driver stated this while gesturing westbound in the 1400 block of Ogden ST NW. Officers immediately observed a black male wearing all black and a black beanie entering the south alley of 1400 Ogden St. NW. Officers drove to the mouth of the alley where they observed the male walking southbound in the alley. It was then when Officers Toth and Pitt observed the defendant, later identified as David Stewart (hereinafter referred to as Defendant Stewart) walking southbound through the alley with his back to the Officers. Officer were able to observe a black firearm in Defendant Stewart's right hand. Officers cautiously approached Defendant Stewart and then observed him take the firearm from his right hand and place it inside the interior of his jacket on his left side, underneath his armpit, in an apparent attempt to conceal the firearm.

It was at that time that Defendant Stewart turned out of the mouth of the alley and headed westbound in the 1400 block Oak St. NW. At the point in time Officers Toth and Pitt lost sight of Defendant Stewart. However, Officer King was standing in the 1400 block of Oak St. NW and immediately observed Defendant Stewart exit the alley. At that point in time, Officer King ordered Defendant Stewart to stop and get down on the ground. As Defendant Stewart complied with

Officer Kings orders, Officer King noticed that Defendant Stewart was holding his left arm tight to his body in an apparent attempt to keep something from falling. As Defendant Stewart was going down to the ground, a black handgun fell from Defendant Stewart's left interior jacket.

Officers Toth and Pitt exited the alley and assisted with apprehension of Defendant Stewart.   The defendant was apprehended without further incident.

An investigation into the sounds of gunshots revealed the following:   Officers spoke to W-1 who stated that she observed the defendant walking back and forth in the 1400 block of Oak St. NW holding a gun in his hand. W-1 said that at some point, the defendant held the gun in the air and began firing and then walked eastbound on Oak St. NW. W-1 also took photos of the defendant holding the gun and showed Officers on scene. It should be noted that the photos show a black male, wearing a black jacket, a black and white beanie on his head, and black and red shoes holding a gun in his right hand. When Officers observed and stopped the defendant, he was wearing the same clothing as the photos W-1 took.

W-2 reported to Officers that he saw the defendant in the 1400 block of Oak St. NW with a gun in his hand.  W-3 stated that he was driving eastbound in the 1400 Oak St. NW when he saw the defendant holding the gun in his hand. W-3 reported that he saw the defendant firing the gun in the air multiple times. At this point, W-3 parked his car and watched as the defendant continued walking in the block towards W-3. The defendant waved the gun towards W-3, motioning for him to get out of his car. W-3 got out of his car as the defendant began walking eastbound on Oak St NW, away from W-3. W-3 proceeded to run from the area. Officers on scene located 7 spent shell casings in front of 1447 Oak St. NW.

Crime Scene CSU 63 responded to the scene to process the weapon. Closer inspection of the firearm revealed that it was a nine millimeter Sig P239 (Serial # SA40327) semi-automatic firearm with a no rounds in the chamber and no rounds in the magazine. A WALES/NCIC check also revealed that the recovered firearm was not actively registered and was stolen on 4-1-1998 from Las Vegas, Nevada. There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case would have traveled in interstate commerce.

The defendant was subsequently transported to the hospital for medical treatment related to injuries he sustained prior to the incident described above.   While at the hospital, the defendant began making statements to Officers unprompted. Specifically, the defendant made statements to Officer Eveland to the effect of "wanting to go to Gallery Place with a 100 round magazine and kill only white people." Officer Eveland reported that the defendant stated he considered doing it because he wants to commit jihad and go to prison. The defendant further stated that he "did what he did today because he wanted the Police to shoot him and he wants January 6th to happen again but with AK47s."

A criminal history check of Defendant Stewart through the National Crime Information Center (NCIC) confirmed that the defendant has a prior felony conviction in U.S. District Court for the District of Columbia, case number 17-CR-148 (EGS) for Unlawful Possession of a Firearm (Prior Conviction).   The defendant was sentenced to forty-one (41) months of incarceration for this conviction. The defendant is still on supervision for this conviction. Therefore, the defendant was aware at the time of his arrest in this case that he had a prior conviction for a crime punishable by more than one year.

As set forth fully above, the first factor, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here, the defendant was illegally in possession of a loaded firearm. Multiple witnesses observed the defendant discharging the firearm; and the defendant made statements to law enforcement that present additional concerns about the danger he poses to the community.

Courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

The nature of this offense therefore weighs in favor of detention.

### **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is quite strong. As set forth above, multiple civilians observed the defendant with a firearm. One of the civilian witnesses provided images of the defendant with the firearm (firearm is circled in red below):

7





As law enforcement attempted to stop the defendant, officers observed the firearm and voiced the observation over the radio. The body worn camera footage captures the defendant wearing the same clothing as seen in the images provided by the civilian witness (sneakers with red details, black cap, dark clothing), as depicted below:



The firearm recovered from the defendant – a 9mm firearm – was consistent with the seven 9mm casings recovered where witnesses had described observing the defendant discharging the firearm.[2]   Finally, the statements made by the defendant raise serious concerns about the danger he would present if he were to be released, are captured on body-worn camera footage.

### Defendant Stewart's History and Characteristics

The third factor, the history and characteristics of the person, similarly weigh in favor of detention.  Defendant Stewart has amassed a lengthy criminal history of assaultive conduct and firearms offenses, including the following convictions:

- Attempted Carrying a Pistol Without a License & Possession of Cocaine (2006);
- Simple Assault and Assault on a Police Officer (2008);
- Carrying a Pistol Without a License (2008);

---

[2] At the time the firearm was recovered, there were no live rounds of ammunition in the firearm. It appears that all of the rounds had been discharged by the defendant, based on the seven 9mm shell casings recovered on the scene.

- Unlawful Possession of Contraband (2010);

- Assault on a Police Officer (2013);

- Assault with a Dangerous Weapon (2014); and

- Unlawful Possession of a Firearm (Prior Conviction Greater than One Year) (2021).

As noted in the Sentencing Memorandum for his most recent firearms conviction in Case No. 17-CR-148(EGS), the facts of his October 2016, arrest are strikingly similar to the facts at issue here:

> The first responding officer observed Defendant David Stewart standing alongside a building located at 2369 11th Street, Northwest, firing a semi-automatic pistol into the air. (See Attachment B) This officer waited for additional MPD officers to arrive before approaching Defendant Stewart. As additional MPD officers arrived on scene, they exited their scout cars, ordered Defendant Stewart to drop the firearm, and placed Defendant Stewart in handcuffs. Defendant Stewart was under the influence of some type of controlled substance and was making nonsensical statements during this arrest. (See Attachment B).
>
> Officers recovered a Taurus PT111 G2, 9mm semi-automatic handgun from the are immediately next to Defendant Stewart's right foot. The firearm had an obliterated serial number. Crime Scene officers recovered approximately 13 spent cartridge casings from the scene of the arrest.



*See* Case No. 17-CR-148(EGS), ECF NO. 57 at 1-2.   Even more troubling:

> Approximately nine months later, Defendant Stewart was arrested again for carrying a loaded semi-automatic firearm in the District of Columbia. This time, Defendant Stewart was arrested on July 10, 2017 on Park Road with a loaded .40 caliber firearm tucked into his shorts.
>
> Both offenses were committed while the Defendant was on Supervised Release for an Assault with a Dangerous Weapon conviction from 2014 where the Defendant served a 30-month sentence for stabbing two individuals at a gas station in Washington, D.C.

*See id.* at 2-3.

Multiple prior convictions and periods of incarceration appear to have served no deterrent effect on the defendant: in each instance, he has been released to the community and re-armed himself with a firearm.   And he has not only possessed firearms unlawfully, but he has used them in a way that endangers the community.   *See, e.g.*, October 2016, Arrest and April 23, 2022, Arrest.   Outside of the conduct underlying his most recent offense, his supervising officer advised that the defendant has been using illicit substances, including PCP, which raise additional concerns about the danger he would present if he were released in this case.

For the reasons set forth above, this factor also weighs in favor of detention.

### **Danger to the Community**

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   The charged offense involves the defendant's possession of a loaded firearm, despite being legally barred from such possession due to numerous prior convictions.   The firearm that the defendant possessed had the potential to cause serious bodily injury (or death) to members of the community, law enforcement, or to the defendant himself (had officers used force to effect the arrest in this case).   The defendant's

12

criminal history, including violent offenses using firearms – coupled with his possession of a loaded firearm while on supervision, overwhelmingly demonstrate that he is a danger to the community. This factor, as with the three prior factors, weighs in favor of the defendant being held without bond pending trial.

### There is No Condition or Combination of Conditions that Would Ensure Defendant Stewart's Appearance or Compliance with Court-Ordered Release Conditions

At the time of the instant offense, Defendant Stewart was being supervised at the highest by District Court probation and was not in compliance with his supervision (including the apparent use of PCP). Moreover, while on release for the October 2016, firearms case, he was re-arrested with a firearm in 2017, further demonstrating his inability to comply with conditions imposed by the Court. The defendant's inability to comply with the terms of his supervised release, strongly supports the government's argument that he will continually circumvent the Court's efforts to reasonably control his behavior through conditions of release and keep the community safe.

### Conclusion

The Court should grant the government's motion to detain Defendant Stewart pending trial because he has demonstrated that he is a danger to the community.

    Respectfully submitted,

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

By:    /s/

    Laura Crane
    D.C. Bar No. 992454
    Assistant United States Attorney
    601 D St. NW
    Washington, D.C. 20001

Telephone: (202) 252-7667
E-mail: laura.crane@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served by email upon defense counsel on this 26th day of April 2022.

_____/s/_____
LAURA CRANE
Assistant United States Attorney